**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DARLENE ARAGON,

       Plaintiff,

v.                                                    CV 16-069 WPL/SCY

ALLSTATE INSURANCE COMPANY,

       Defendant.

**ORDER GRANTING MOTION TO BIFURCATE AND STAY**

       Darlene Aragon claims that she was injured in a rear-end automobile collision on the Interstate 40 fly-over on January 27, 2014 in Albuquerque, New Mexico. The tortfeasor, Dominic Lucero, was insured by USAA, and USAA paid its policy limits of $25,000 to settle Aragon's claims. Aragon then made a claim against her own insurance company, Allstate Insurance Company, to recover benefits under her underinsured motorist ("UIM") coverage. When Aragon and Allstate disagreed about the value of her claim, Aragon filed suit. In Count I of her First Amended Complaint, Aragon seeks to recover damages under her UIM coverage. In Count II, Aragon alleges violations of the Unfair Claims Practices Act and insurance bad faith (collectively "the bad faith claims") against Allstate. Allstate has filed a motion to dismiss and an alternative motion to bifurcate and stay discovery as to the bad faith claims. (Doc. 11.)[1]

       Allstate asserts that Aragon's bad faith claims must be dismissed because a determination of UIM coverage and the amount of Aragon's damages is a condition precedent to bringing those claims. In response, Aragon insists that she has proof to support her bad faith claims which

---

[1] The parties have agreed that I should grant Aragon's Motion to Strike a portion of Allstate's Reply Brief (Docs. 26 & 27): accordingly, that motion is granted.

entitle her to relief. Aragon claims that the "United States Supreme Court has established that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (Doc. 17 at 3, citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) and *Conley v. Gibson*, 355 U.S. 41 (1957)). And until the Supreme Court's decision nine years ago in *Twombly*, this was the proper standard to judge a motion to dismiss for failure to state a claim. However, in *Twombly*, the Court specifically stated that *Conley's* "no set of facts" standard "has been questioned, criticized, and explained away long enough . . . [that] this famous observation has earned its retirement." 550 U.S. at 562-63. The Supreme Court prescribed a new standard for courts to use when evaluating a motion to dismiss: whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Twombly*, 550 U.S. at 570). While the *Twombly/Iqbal* standard does not require significantly heightened fact-pleading in a complaint, the standard is more than a minimal change from prior jurisprudence and is instead a middle ground. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). In determining whether Aragon's complaint states a plausible claim for bad faith, I should consider the nature and specificity of the allegations based on the claims asserted in the case. *Id*.

The purpose behind New Mexico's uninsured/underinsured motorist statute is to expand such coverage in New Mexico to protect the public from damages caused by uninsured or underinsured motorists. *Marckstadt v. Lockheed Martin Corp*., 228 P.3d 462, 467 (N.M. 2009). Insurers like Allstate have a "dual role" with respect to UIM coverage. *Hendren v. Allstate Ins. Co*., 672 P.2d 1137, 1140 (N.M. Ct. App. 1983). On one hand, the insurer sold a policy to its insured and thus continues to have obligations to its insured: The insurer has a duty to deal fairly

and in good faith with its insured in attempting to settle a UIM claim under the policy. *Id.* at 1141. On the other hand, the insurer "assumes an adversary role" to its insured as to questions involving the UIM's negligence and available defenses that the UIM might have. *Id.* To recover UIM benefits, the insured must prove the elements necessary to establish the UIM's negligence: duty, breach of duty, and causation, and also damages that exceed the tortfeasor's liability limits. *State Farm Mut. Auto Ins. Co. v. Safeco Ins. Co.*, 298 P.3d 452, 456 (N.M. 2013); *State Farm Mut. Auto. Ins. Co. v. Barker,* 96 P.3d 336, 339 (N.M. Ct. App. 2004). The insurer is not "precluded from defending the uninsured motorist or from evaluating the claim any differently than it would have had it provided third party coverage," *Hendren*, 672 P.2d at 1141, and may present its defenses on all issues of the UIM's liability for the accident and damages claimed by its insured. *Burge v. Mid-Continent Cas. Co.*, 933 P.2d 210, 218 (N.M. 1996).

The parties dispute the nature, extent and value of Aragon's injuries, and the amount of UIM benefits she is entitled to recover from Allstate. Aragon's insurance policy provides that Allstate will pay damages that she is "legally entitled to recover" from an uninsured motorist. Allstate asserts that Aragon's bad faith claims must be dismissed because she has not yet established that she is "legally entitled to recover" damages caused by the UIM. According to Allstate, "a determination that the uninsured motorist is legally liable to the insured is a condition precedent to the obligation of the insurer to pay off on the policy." *Hendren*, 672 P.2d at 1141 (*quoting Craft v. Economy Fire & Cas. Co.*, 572 F.2d 565, 568 (7th Cir. 1978)).

This principle was illustrated in *State Farm v. Barker*, 96 P.3d 336. Barker was injured in an accident with an underinsured motorist, and several days later suffered a stroke. *Id.* at 337. He sought benefits under his UIM coverage, which State Farm denied, arguing that the stroke was not caused by the accident. *Id.* The claim was submitted to arbitration, and the parties stipulated

that if the arbitrators decided that the accident caused the stroke, Barker's damages would exceed the UIM limits. *Id*. The arbitrators concluded that the accident caused the stroke, and State Farm paid the UIM limits. *Id*. Barker then claimed that he was entitled to prejudgment interest on the award, but the district court granted summary judgment to State Farm on this issue. *Id*. State Farm argued that, because there was a dispute about the amount of damages Barker was legally entitled to collect from the UIM, it had no obligation to pay UIM damages until that issue was resolved. *Id*. at 338. The Court of Appeals affirmed on this issue because "Barker is in no different position than had he been injured by an insured motorist." *Id*. If he had been injured by an insured motorist, questions of liability and causation "would have to be resolved by settlement or litigation before the motorist would be liable for payment." *Id*. State Farm had no obligation to pay UIM damages until the fact finder established that Barker was "legally entitled to collect" from the UIM. *Id*.

Allstate also relies upon *Hovet v. Allstate Ins. Co*., 89 P.3d 69 (N.M. 2004). In *Hovet*, the New Mexico Supreme Court held that third party claimants under an insurance policy could sue an insurer for unfair settlement practices under the Insurance Code. *Id*. at 72-76. However, the Supreme Court noted the potential confusion possible by allowing claims for unfair claims practices to proceed simultaneously with the underlying negligence action, and imposed certain preconditions on such a suit. *Id*. at 76. The New Mexico Trial Lawyers Association, which submitted an amicus brief, stipulated that, to avoid unfair prejudice to the insurer, an unfair claims practices action should be stayed until the negligence action was resolved. *Id*. The New Mexico Supreme Court found this proposal insufficient, and held that a third-party claimant will not even have an unfair claims practices action until after there "has been a judicial determination of the insured's fault and the amount of damages awarded in the underlying

negligence action." *Id*. at 77. Thus, a third party unfair claims practices claim based on failure to settle "may only be filed *after* the conclusion of the underlying negligence litigation, and *after* there has been a judicial determination of fault in favor of the third party and against the insured." *Id*. at 76 (emphasis in original). Because the legislative purpose behind New Mexico's Uninsured Motorist Act "was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance," *Boradiansky v. State Farm Mut. Auto. Ins. Co*., 156 P.3d 25, 27 (N.M. 2007) (citation omitted), *Hovet's* reasoning also applies to first party claims. Similarly, because of the "unique hurdles faced by plaintiffs asserting UIM contract claims," Texas courts sever bad faith claims from UIM claims until the insured establishes that he is entitled to recover UIM damages from the insurer. *In re Am. Nat. Cty. Mut. Ins. Co*., 384 S.W.3d 429, 436 (Tex. App. 2012); *see also In re Allstate County Mut. Ins. Co*., 447 S.W.3d 497, 501-502 (Tex. App. 2014).

Although requesting that Aragon's bad faith claims be dismissed, Allstate admits that the usual approach is for the court to bifurcate the UIM claim from the bad faith claims and to stay discovery and proceedings on the bad faith claims until resolution of the UIM claim. Rule 42(b) of the Federal Rules of Civil Procedure grants trial courts discretion to select specified claims or issues and decide them before proceeding to other matters in the same case where bifurcation will further convenience or avoid prejudice, or when separate trials will be conducive to expedition and economy. FED. R. CIV. P. 42(b). The moving party must demonstrate the need for a separate trial, as a single trial normally lessens the expense and inconvenience of litigation. *Dixon v. Certainteed Corp*., 166 F.R.D. 487, 488 (D. Kan. 1996). Bifurcation of issues is appropriate "if such interests favor separation of the issues and the issues are clearly separable." *Palace Exploration Co. v. Petroleum Dev. Co*., 316 F.3d 1110, 1119 (10th Cir. 2003) (quotation

omitted). Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may eliminate the need to adjudicate one or more other claims. *See Mandeville v. Quinstar Corp.*, 109 F. App'x 191, 194 (10th Cir. 2004) (unpublished). Regardless of judicial economy or separability, however, "bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).

Given the well developed New Mexico law on insurance bad faith, it is somewhat surprising that there are no New Mexico cases that discuss bifurcation of UIM claims from bad faith claims. However, even if there were such cases, Rule 42 would control and bifurcation is permissible in federal court even when such procedure is contrary to state law. *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1435 (10th Cir. 1993).

Allstate suggests five factors that a court should consider when determining whether to bifurcate a case: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or facts; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided; and (5) whether different witnesses and documentary proof are required for the claims. Aragon claims that bifurcation is not appropriate because her UIM claim and the bad faith claims are so intertwined that they cannot be separated. She also claims that she will be unfairly prejudiced because her expert would have to provide discovery twice, be deposed twice, and testify at trial twice. In partial support of her position, she cites two cases decided by District Judge William P. Johnson, where Judge Johnson refused to bifurcate contractual and extra-contractual claims. *Huss v. Am. Fam. Mut. Ins. Co.*, No. 13cv330 WJ/RHS, Doc. 23 (D.N.M. Jan. 10, 2014) (consolidated with 13cv332 WJ/RHS); *Frietze v. Allstate Ins. Co.*, No. 12cv840 WJ/CG, Doc.

39, Proposed Findings and Recommended Disposition (D.N.M. Mar. 18, 2013) (adopted Apr. 5, 2013, Doc. 48).

Judge Johnson's decisions in *Huss* and *Frietze* may be dealt with summarily. Neither case involved a claim for UIM benefits and also bad faith claims; instead, both cases involved questions of insurance coverage and bad faith claims, which are analytically distinct. In *Frietze*, Judge Garza, in her Recommendation to Judge Johnson, questioned whether resolution of the contractual claim would be entirely dispositive of the extra-contractual claims. No. 12cv840 WJ/CG, Doc. 39 at 4. In *Huss*, Judge Johnson found that the contract and extra-contractual claims were "sufficiently linked" to proceed through discovery and trial together. No. 13cv330 WJ/RHS, Doc. 23 at 4. In a case not cited by Aragon, Judge Johnson was presented with a claim for UIM benefits and also bad faith claims. *Fahey v. State Farm Ins., Inc.*, No. 13cv703 WJ/LAM (D.N.M. 2013). The parties filed a joint motion to bifurcate and stay discovery on the bad faith claims because the parties agreed that the UIM claims were potentially dispositive of all remaining claims. *Id.* Doc. 15. Consistent with his approach in *Huss*, Judge Johnson filed an order to show cause why the joint motion to bifurcate should not be denied. *Id.* Doc. 16. In response, Fahey dismissed without prejudice her extra-contractual claims so she could proceed first with the UIM claim. *Id.* Doc. 17.

Based upon a Recommendation by Judge Schneider, District Judge Robert Brack bifurcated bad faith claims from UIM claims in *Beard v. Allstate Prop. & Cas. Co.*, No. 11cv1067 RB/WDS, Docs. 47 & 48 (D.N.M. Oct. 3 2012; Oct. 31, 2012). In other cases that I have handled that involved both UIM and bad faith claims, the parties have stipulated to bifurcate and stay discovery on the bad faith claims while they pursue litigation of the UIM claim. *See Tepper v. GEICO Gen. Ins. Co.*, No. 16cv223 KK/WPL, Doc. 11 (D.N.M. Apr. 27,

2016); *Rivera v. GEICO Gen. Ins. Co.*, No. 14cv623 WPL/CG, Docs. 40, 41 (D.N.M. Jan 2, 2015; Jan 5, 2015).

Undoubtedly, tactical decisions are involved when parties consider whether to seek bifurcation of UIM and bad faith claims. Plaintiff's lawyers may agree to bifurcation if they are unsure of the strength of the bad faith claims and wish to delay incurring the cost of discovery on them until after the UIM claim is resolved. Defense lawyers may choose not to move for bifurcation of bad faith claims because they prefer the confusion that may occur from a more complex presentation of evidence on multiple issues at trial, or because they do not want to defend a bad faith case alone if they lose on the underlying issue. S. Ashley, *Bad Faith Liability & Damages* § 10:41 (2d ed. 1997). An unusual example of tactical decision making on bifurcation is found in *Dotson v. State Farm Mut. Auto. Ins. Co.,* No. 13cv99 KG/WPL (D.N.M. 2013). Initially, State Farm planned to move for bifurcation of the bad faith claims from the UIM claim, and Dotson opposed the motion. *Id.* Doc. 13. State Farm subsequently decided not to move for bifurcation of the bad faith claims and wanted to try the UIM and bad faith claims concurrently. *Id.* Doc. 22. Dotson then moved to bifurcate the claims, and State Farm opposed this request. *Id*. Dotson argued that his bad faith claims depended on the finding of damages on the UIM claim, and that the bad faith claim may not go forward depending upon the jury's finding. *Id*. In the end, Dotson amended his complaint to dismiss without prejudice the bad faith claims, retaining the right to refile those claims after the jury's determination on the UIM claim. *Id.* Doc. 25.

Bifurcation of Aragon's bad faith claims from the UIM claim is appropriate for a number of reasons. As explained above, bifurcation (or dismissal) is mandatory because, under New Mexico law, resolution of the UIM claim is a condition precedent to Aragon bringing claims for

bad faith; Aragon has not yet established that she is "legally entitled to recover" UIM benefits. Until Aragon establishes that she is entitled to recover UIM benefits, she may not assert bad faith claims, and those claims should be bifurcated from the UIM claim instead of dismissed and all discovery into the bad faith claims stayed until completion of the UIM phase of this case.

Even if resolution of the UIM claim is not a formal condition precedent, bifurcation is appropriate because a decision in favor of Allstate on the UIM claim would render the bad faith claims moot. If the determination of the UIM claim shows that Allstate had reasonable grounds for its handling of Aragon's UIM claim, that would dispose of the bad faith claims. Bifurcation is often granted on efficiency and judicial economy grounds when resolution of one claim may eliminate the need to adjudicate other claims. *See Mandeville*, 109 F. App'x. at 194 (district court properly bifurcated issue of piercing corporate veil from breach of contract and Title VII claims because trial on the piercing the corporate veil claim would have been unnecessary absent a ruling in plaintiff's favor on the underlying claims); *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999) (district court properly bifurcated excessive force claims against police officers from claims against the City and the Police Department because a jury verdict for the police officers would eliminate the need to litigate the issues against the City defendants).

Bifurcation is also appropriate because the UIM claim is separate from the bad faith claims and involves different questions of law and fact and will require different witnesses and proof. To recover UIM benefits, Aragon must prove the elements necessary for any negligence claim: duty, breach of duty, and causation, and also damages that exceed the limits of the tortfeasor's policy. In contrast, to prove a first-party claim for bad faith failure to pay her claim, Aragon must prove that Allstate's reasons for denying payment of her claim were frivolous or

unfounded, *Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 236 (N.M. 2004); NM UJI Civ. 13-1702, and to prove her Unfair Insurance Practices Act claim she must prove that Allstate failed to attempt in good faith to effectuate "prompt, fair and equitable settlements of an insured's claim in which liability has become reasonably clear." NMSA § 59A-16-20(E). An insurance company has a right to deny a claim without exposure to a bad faith claims if it has reasonable grounds to deny coverage or a legitimate reason to question the amount of damages claimed by the insured. *Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010); *Am. Nat. Prop. & Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M. Ct. App. 2012); *Hovet*, 89 P.3d at 78.

Although Aragon claims that she will be prejudiced by bifurcation because her expert will have to participate in discovery twice and testify twice, she fails to disclose the identity of this expert, and this claim likely has no merit. Discovery in a UIM case focuses on the tortfeasor's liability for the accident and the damages and losses the plaintiff suffered as a result. Assuming liability is at issue, testimony in the UIM case could be expected from the investigating police officer, perhaps an accident reconstruction expert, Aragon, the tortfeasor, and from treating physicians and any damage experts retained by the parties. Discovery for the bad faith claims would involve an examination of Allstate's investigation of Aragon's claim, its reasons for valuing Aragon's claim as it did, and the sufficiency of any offers made to settle the case. Aragon would seek to discover Allstate's claims adjuster's file, its claims handling manuals, procedures and policies, and she may also seek discovery of other claims, reserve information, and the adjuster's personnel file. Testimony in the bad faith trial could be expected from Allstate's claims adjuster and other representatives, and from experts in insurance claims handling, in addition to the attorneys who handled the UIM case. Bifurcation will promote economy for both the parties and the court because it will allow the parties to focus their

litigation efforts on the simpler UIM issues, leaving them (and the court) to address the more complicated and extensive bad faith issues if Aragon prevails on the UIM claim.

Further, bifurcation will prevent prejudice to Allstate. *See Oulds*, 6 F.3d at 1435 (affirming trial court's decision to bifurcate contract claim from bad faith claim to avoid prejudice to the insurer). Evidence relevant to the bad faith claims may be prejudicial to Allstate's ability to defend the UIM claim. There is a strong policy interest in encouraging settlement of disputed claims, and Federal Rule of Evidence 408 precludes introducing evidence of settlement offers in subsequent litigation between the parties. FED. R. EVID. 408; *Hovett*, 89 P.3d at 77. When an insurer has made an offer to settle a disputed UIM claim, a conflict arises between the insured's right to introduce the offer in the trial of the bad faith claims and the insurer's right to exclude it when defending the UIM claim. *In re Am. Nat. Cty. Mut. Ins. Co.*, 384 S.W.3d at 435. Excluding evidence of the offer would deprive the insured of evidence to prove the bad faith claims. *Id*. However, admitting evidence of the offer would deny the insurer the right to exclude evidence unfairly implicating that it has admitted liability on the UIM claim. *Id*. For these reasons, Texas courts routinely bifurcate bad faith claims when an offer of settlement has been made by the insurer. *Id*. at 434.

While modern rules of procedure allow an insured to bring all possible claims against an insurer in one case, they do not require the court to try disparate claims together. Under New Mexico law, bifurcation of bad faith claims from UIM claims appears to be mandatory. Further, bifurcation is further appropriate because resolving the UIM claim first may also resolve the bad faith claims, there is no overlap between the issues and proof required for the UIM claims and bad faith claims, and bifurcation will prevent prejudice to Allstate and is not unfair to Aragon. Allstate's motion to dismiss Aragon's bad faith claims is denied, but its alternative motion to

bifurcate and stay all proceedings on the bad faith claims pending resolution of the UIM claim is

granted.

      IT IS SO ORDERED.

                                           William P. Lynch
                                         United States Magistrate Judge